UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JEFFREY EDWARD WILLIAMS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:14-CV-00034-JCN |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant | ) | |

# MEMORANDUM OF DECISION [1]

Plaintiff Jeffrey Williams applied for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments, but that he retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

As explained below, following a review of the record, and after consideration of the parties' written and oral arguments, the Court affirms the administrative decision.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the September 19, 2013, decision of the Administrative Law Judge.[2] (ALJ Decision, ECF No. 9-2.) The ALJ's decision tracks the five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920. For purposes of Title II, Plaintiff's insured status ended March 31, 2013.

---

[1] The parties have filed a consent authorizing the undersigned to conduct any and all proceedings and enter a final order and judgment in this matter.

[2] Because the Appeals Council "found no reason" to review that decision (PageID # 25), the ALJ's Decision is the Acting Commissioner's final decision.

At step 1 of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity beginning December 17, 2011, the alleged onset date. At step 2, the ALJ concluded that Plaintiff has the following severe impairments: alcohol related pancreatitis; recurrent umbilical hernia; arthritis; degenerative disk disease of the lumbar spine; affective disorder/depression; substance addiction disorder/alcohol abuse (status undetermined). At step 3, the ALJ determined that the combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P.

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity (RFC). The ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work; stand/walk for 2-hours and sit for 6 hours in an 8-hour workday; occasionally climb ramps and stairs, but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; understand and remember simple instructions and execute simple tasks on a consistent schedule; interact with coworkers and supervisors; and adapt to occasional changes in routine.

At step 4, the ALJ found that Plaintiff's degree of limitation precluded past relevant work. Using section 201.28 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 as a framework for decision-making at step 5, the ALJ determined that Plaintiff could engage in other substantial gainful employment based on vocational expert testimony that Plaintiff's RFC would not result in a significant erosion of the unskilled sedentary occupational base. With his step 5 finding, the ALJ concluded that Plaintiff has not been under a disability from December 17, 2011, through the date of decision.

## DISCUSSION

Plaintiff argues that the ALJ erred in his RFC finding. Specifically, Plaintiff argues that

the ALJ failed to consider evidence related to the severity of Plaintiff's osteoarthritis and degenerative disk disease. (Statement of Errors at 3.) Plaintiff also contends that the ALJ's decision to discount the opinions of Dr. Barker and Dr. Praba-Egge, both treating physicians, is not supported by substantial evidence. (*Id.* at 4.) According to Plaintiff, the opinions of Dr. Barker and Dr. Praba-Egge, and the longitudinal medical treatment records, establish a greater degree of limitation than the ALJ found. (*Id.* at 6.)

**A.    Standard of Review**

The Court must affirm the administrative decision provided that the decision is based on the correct legal standards and is supported by substantial evidence, even if the record could support an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.    Analysis**

Plaintiff asserts that the ALJ erred as to Plaintiff's physical RFC. Plaintiff has the burden to prove the degree to which his impairments restrict his capacity to engage in substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Mathews v. Eldridge*, 424 U.S. 319, 336 (1976). In addition to his testimony and medical records, Plaintiff offered opinion evidence on the issue from two treating sources, Dr. Anita Praba-Egge, M.D. and Dr. Megan Barker, M.D.

In her medical source statement (Exh. 30F), Dr. Praba-Egge opined that Plaintiff can stand

or walk for less than 2 hours in an 8-hour workday, but is not restricted as to sitting. As support for her opinion, Dr. Praba-Egge cited limitations due to chronic leg pain, as well as abdominal pain from an umbilical hernia and pancreatitis. She also determined that Plaintiff could never engage in any of the postural activities identified on the source statement form (climbing, balancing, kneeling, etc.), and could only occasionally reach, handle, finger, and feel. The ALJ concluded that Dr. Praba-Egge's opinion was not supported by the objective evidence in the medical records, and was inconsistent with Plaintiff's "patent ability to walk, sit and stand." (ALJ Decision at 9.) The ALJ, therefore, afforded little weight to the opinion.

Dr. Barker offered an opinion similar to that of Dr. Praba-Egge. (Exh. 31F.) Dr. Barker determined that Plaintiff had the capacity to stand or walk for less than 2 hours, but had no limitation on sitting. Dr. Barker also found a pushing and pulling restriction in Plaintiff's lower extremities. She noted that Plaintiff was likely to become unstable on his feet, and was issued a walker following a hospitalization. Dr. Barker also assessed that Plaintiff can never kneel, crouch, crawl, or stoop. Citing the lack of objective evidence regarding the existence of leg instability or loss of balance, the ALJ did not adopt Dr. Barker's opinion. (ALJ Decision at 9.)

In support of his Statement of Errors, Plaintiff relies upon a treatment record prepared by Dr. Barker's office regarding a November 21, 2012, office visit. The record of the visit reflects that Plaintiff reported tingling and numbness in his legs, but that he was able to bear weight. Dr. Barker also noted that Plaintiff no longer required a walker and was using a cane. In her treatment plan, Dr. Barker suggested that Plaintiff's symptoms would continue to improve, and that she would revisit her assessment to determine whether a chronic pain issue arose. (Exh. 16F, p. 13, PageID # 592.)

The November 2012 visit followed an August 2012 hospitalization for severe pancreatitis. In a history report associated with a February 2013 office visit, Dr. Praba-Egge noted that subsequent to the hospitalization, Plaintiff had "recovered clinically" although there was radiographic evidence of a pancreatic pseudocyst. (Exh. 17F, p. 5, PageID # 622.) The record also identified the continuation of chronic leg pain, which was not otherwise evaluated. (*Id.*) A June 10, 2013, medical record notes that Plaintiff has "no difficulty with balance." (Exh. 28F, p. 3, PageID # 735.)

The ALJ ultimately concluded that the source statements of Dr. Barker and Dr. Praba-Egge were not persuasive. He relied, instead, on a consultative examination report prepared by Dr. Robert Charkowick, D.O. (Exh. 7F). Dr. Charkowick's examination included an assessment of Plaintiff's lower extremity function, including an examination of Plaintiff's feet, both of which were noted to be significantly impaired. (*Id.* p. 2, PageID # 355.) Nevertheless, Dr. Charkowick saw "no reason why [Plaintiff] cannot be in an occupation that requires light sedentary work . . . and . . . does not require him to stand or walk more than a couple hundred feet." (*Id.*) Based on Dr. Charkowick's examination report and the medical records available at the time, Dr. J.H. Hall, M.D., issued a physical RFC assessment on March 12, 2013, which RFC assessment aligns with the ALJ's finding that Plaintiff can stand or walk for 2 hours in an 8-hour workday, may "occasionally" meet the postural demands of work, and does not suffer any manipulative limitation. (Exh. 5A, p. 12, PageID # 108.)

The ALJ did not err when he declined to give controlling weight to the opinions of Drs. Barker and Praba-Egge. Where a treating physician's opinions are inconsistent with other medical evidence in the record, or are unsupported by a review of the medical evidence in the record, the opinions are properly denied controlling weight in the ALJ's analysis. *Bowker v. Comm'r, Soc.*

*Sec. Admin.*, No. 2:13-CV-122-DBH, 2014 WL 220733, at *3 (D. Me. Jan. 21, 2014) (citing 20 C.F.R. § 404.1527(d)(2)). Here, certain opinions offered by Drs. Barker and Praba-Egge are not supported by the treatment records. For example, the record lacks any clinical findings that substantiate any manipulative limitations or preclude all postural activity. The treating physicians' opinions are also inconsistent with some of the findings of Dr. Charkowick following his examination of Plaintiff. Because the treating physicians' opinions are not supported by the medical record, and are inconsistent with other medical evidence of record, the ALJ did not err when he afforded the opinions little weight in his analysis.

The ALJ also did not improperly discount Plaintiff's subjective complaints. The ALJ concluded that the medical records introduced after Dr. Hall's reconsideration evaluation "fail[ed] to substantiate much of" Plaintiff's claims about impairment in his extremities. (ALJ Decision at 9.) The Court has reviewed the longitudinal record for evidence related to treatment of inflammatory arthritis (Reiter syndrome) and concludes that the ALJ has fairly characterized the medical records introduced after Dr. Hall's RFC assessment. The record appears to reinforce the finding of Dr. Sidney Block, M.D., which finding Dr. Hall considered, that the condition "seems to be under good control with low dose Prednisone." (Exh. 18F, PageID # 624.)[3]

The record also supports the ALJ's decision to discount Plaintiff's subjective complaints of severe abdominal pain. The medical records reflect that Plaintiff has experienced disabling-level abdominal symptoms with episodic alcohol abuse, and that Plaintiff's baseline level of abdominal pain is not otherwise disabling. The medical record in fact establishes (1) that

---

[3] Plaintiff does not identify, and the Court did not observe, any evidence of progressive worsening of his degenerative disk disease after Dr. Hall's consideration of his RFC. Additionally, Plaintiff's recurrent umbilical hernia was the focus of a surgical consult in June 2013. The consulting physician, Dr. Craig Thompson, M.D., concluded that hernia was not a source of acute abdominal pain. (Exh. 27F, PageID # 726.) Plaintiff's degree of mental impairment is not a focus of his Statement of Errors; nor is it relied on by his treating physicians in support of their medical source statements.

Plaintiff's pancreatitis is the product of many years of alcohol abuse, as noted by the ALJ; and (2) that subsequent to Dr. Hall's March 2013 RFC assessment, Plaintiff's abdominal pain symptoms have required acute care in instances when he has failed to abstain from abusing alcohol. (Exhs. 22F, 23F, 28F, PageID # 676, 679-80, 687, 733.)[4] The record, therefore, supports the conclusion that Plaintiff's pancreatitis is directly related to his consumption of alcohol. Under these circumstances, the ALJ did not err when he made a common-sense assessment of the medical records introduced after Dr. Hall's reconsideration evaluation, and concluded that the pancreatitis was not debilitating.

## CONCLUSION

Based on the foregoing analysis, the Court affirms the administrative decision.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of January, 2015.

---

[4] The tracking of pancreatitis symptoms given by Dr. Hall (PageID # 104) also demonstrates the historic correlation between severe abdominal pain symptoms and alcohol abuse.